IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARL L. HELTSLEY,<br><br>         Plaintiff,<br><br>    v.<br><br>SERGEANT STEVEN HARRIS, OFFICER C. DECIOUS, OFFICER A. MANDELL, OFFICER G. LEWIS, and DOES ONE through TEN,<br><br>         Defendants.<br>_____/ | No. C 06-2626 CW<br><br>ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

    This is a 42 U.S.C. § 1983 case brought by Earl Heltsley against four City of Richmond Police Officers. Defendants Steven Harris, C. Decious, A. Mandell and G. Lewis move for summary judgment, arguing that Plaintiff's claims of excessive force are barred by his no contest plea to charges of resisting arrest. Heltsley opposes the motion. The matter was heard on May 24, 2007. At the hearing the parties were ordered to submit additional materials documenting the factual basis for Heltsley's underlying conviction. Having considered all of the papers filed by the parties, the evidence cited therein and oral argument on the motions, the Court denies Defendants' motion for summary judgment.

BACKGROUND

This case arises out of Heltsley's September 22, 2003 arrest. On that day, Defendant Steven Harris received an unsolicited phone call from Heltsley's half brother Mike Rogers and Rogers' step-daughter Katheryn Snyder. Rogers owns Andy's Donut Shop, where Heltsley worked part-time. Heltsley lived in a room behind the shop. Harris states that Rogers told him that Heltsley had been using crack cocaine and methamphetamine and was acting paranoid and irrational. Rogers also reported that Heltsley had prior felony convictions and always carried two or three guns. Specifically, Rogers stated that Heltsley carried one gun at the small of his back, one in a fanny pack and one on his ankle.

Snyder told Harris that Heltsley was always armed and that he had told her that he was manufacturing sawed-off shotguns and machine guns in his apartment. Snyder reported that Heltsley had been firing his guns in his room behind the donut shop. Snyder stated that she stopped working at the donut shop because she was afraid of Heltsley.

After talking with Rogers and Snyder, Harris conducted a criminal history check and confirmed that Heltsley had a prior felony conviction for possession of dangerous weapons. Harris and another sergeant who is not a Defendant went to the donut shop to interview Snyder's mother, to contact Heltsley and to preserve evidence until a search warrant could be obtained.

Harris interviewed Snyder's mother, Marylin. She informed him that Heltsley carried a revolver and that she had heard him fire a gun in his room behind the donut shop. She also reported that,

2

while holding a gun, Heltsley had threatened to shoot her and her children. Marylin stated that she was afraid of Heltsley.

Close to midnight, after two other officers, Defendants Mandell and Lewis, arrived, Heltsley drove up in his car and parked in the lot next to the donut shop. The parties' accounts of what happened next differ greatly. Defendants allege that when Heltsley stepped out of his car, Mandell ordered him to step away from the vehicle. Defendants allege that instead of doing so, Heltsley threw a ceramic coffee cup at Mandell and began to walk away from his car. Mandell alleges that he saw Heltsley reaching into the fanny pack he was wearing around his waist. Mandell instructed Heltsley to make his hands visible, to "get on the ground" and to "stop moving." Mandell Declaration ¶ 8. Defendants allege that Heltsley dropped to a crawling position and began crawling toward the corner of the donut shop. Mandell continued to instruct Heltsley to stop and lie on his stomach.

Harris declares that by the time he arrived at the lot, Defendants Decious and Mandell where there, instructing Heltsley to get on the ground and to stop moving. Heltsley continued to crawl toward his room at the back of the donut shop. Harris, Decious, and Mandell then attempted physically to restrain Heltsley. Harris and Mandell declare that "Heltsley significantly resisted the officers attempt to arrest and control him" and "Heltsley fought violently against the officers' efforts to control and arrest him." Harris Declaration ¶ 23, 24; Mandell Declaration ¶ 11, 12.

According to Defendants, it then took more than four officers several minutes to control and handcuff Heltsley. Harris and

3

1  Mandell maintain that Heltsley continued to struggle and that he
2  managed to rise to his feet several times despite the officers'
3  efforts.  At some point paramedics arrived on the scene to assist
4  with what Defendants describe as Heltsley's "medical emergency."
5  The paramedics requested that the officers remove Heltsley's
6  handcuffs so they could treat him.  When the handcuffs were
7  removed, Heltsley continued to struggle and scared away the
8  paramedics.  The officers then handcuffed Heltsley again and
9  strapped him to the gurney so he could be taken to the hospital in
10 the ambulance.

11       In his deposition, Heltsley testified that he drove into the
12 parking lot behind the donut shop, exited his vehicle, locked it
13 and began walking toward the shop before being approached by a
14 police officer he recognized as Officer Rood.  Heltsley noted that
15 Rood had his gun drawn, so he put his hands in the air and stopped
16 moving.  Heltsley states that immediately after he put his hands in
17 the air, somebody came from behind him, grabbed his left hand and
18 handcuffed him.  Heltsley states that he asked "what was this
19 about" as the person was handcuffing him and said that the
20 handcuffs were too tight.  Heltsley did not see any officer other
21 than Rood and does not know who handcuffed him.  Heltsley states
22 that he was not resisting, but that the person who handcuffed him
23 kicked his left leg out from beneath him and pushed him to the
24 ground.  Heltsley fell first to his knees and then lay face-down on
25 the ground with his chin resting on the ground.  People then began
26 to strike him with blunt objects for a minute or two before
27 somebody held him down, pulled his legs up behind his body and sat

4

on him. He believes that there were four people sitting on him. He states that he was lying still so that they would stop hitting him. Heltsley was hit in the arm and called out, "You broke my arm." Heltsley tried to tell the people sitting on him that he could not breathe because of their weight. Heltsley felt somebody twist his head to the side and step on it with a boot. He also felt something hard against his neck, choking him. Heltsley testified that he blacked out and does not remember anything else before waking up in the hospital. According to his testimony, Heltsley was conscious for between five and fifteen minutes of the beating.

Heltsley also attaches the deposition testimony of a bystander named Lamont Robinson. Robinson testified that he was on his way home and decided to stop at the donut shop. When he pulled up in front of the shop, he noticed three police cars. Robinson saw two officers walking toward the parking lot at the rear of the shop and another walking along the side of the shop. Robinson states that he saw Heltsley get out of his car and saw the officers approach Heltsley and tell him that they wanted to talk to him. Robinson saw Heltsley turn around and stop. According to Robinson, the officers then walked up to Heltsley and told him to put his hands up. Heltsley complied, and the officers pat-searched him and hand-cuffed him. Robinson heard Heltsley tell the officers, while he was still standing up, that the handcuffs hurt him. Robinson states that Heltsley complained about the handcuffs for some time, and the officers pushed Heltsley to the ground by his shoulders. Robinson saw Heltsley fall to his side and then begin to move to

5

get on his stomach.  Robinson heard Heltsley continue to say that the handcuffs hurt him.  The officers then began hitting Heltsley with their batons and flashlights.  At some point, Robinson heard a hit and a crack and heard Heltsley tell the officers, "You broke my arm."  Robinson states that there were initially three officers, but that another police car with two additional officers pulled up and those officers also hit Heltsley with their batons and flashlights.  Robinson states that he went into the donut shop, bought donuts and left.

Heltsley was charged in a twelve count information with various charges related to possession of assault weapons, explosive devices and the ingredients to create explosive devices, possession of methamphetamine and related paraphernalia, and resisting an executive officer.

Following the preliminary hearing, Heltsley plead no contest to one count of unlawful assault weapon activity, one count of possession of a controlled substance with a firearm, one count of possession of a destructive device near a public place and one count of resisting an executive officer with force or threat pursuant to California Penal Code § 69.  Heltsley's counsel stipulated to the factual basis for the offenses based on the "preliminary hearing transcript and the police reports."  Blechman Supplemental Declaration, Exhibit J at 3.

Heltsley now seeks damages for Fourth and Fourteenth Amendment claims that Defendants used excessive force in arresting him. Defendants move for summary judgment, arguing that pursuant to Heck v. Humphrey, 512 U.S. 477 (1994), Heltsley's claims are barred by

6

his § 69 conviction.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods. Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir.

7

2000).

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Id.

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. Nissan, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. Id.

8

1 This is true even though the non-moving party bears the ultimate
2 burden of persuasion at trial.  Id. at 1107.

## DISCUSSION

In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a 42 U.S.C. § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus.  Heck, 512 U.S. at 486-87.

Under California law, a § 69 conviction "requires that the officer be engaged in the lawful performance of his official duties" when an arrest is made.  Green v. Dunburgh, 2002 U.S. Dist. LEXIS 9473 at *8 (N.D. Cal.) (citing People v. Simons, 42 Cal. App. 4th 1100, 1108 (1996)).  However, a claim based on excessive force during an arrest "necessarily implies that the arrest was 'unlawful' because 'it is a public offense for a peace officer to use unreasonable and excessive force in effecting an arrest.'"  Green, 2002 U.S. Dist. LEXIS  9473 at *9 (quoting People v. Olguin, 119 Cal. App. 3d (1981)).  A § 1983 claim requires a finding that the officers were using unreasonable force.  Therefore courts have found in some situations that such claims are barred under Heck, because they "would impermissibly imply that the element of being engaged in the lawful performance of [the officer's] duty is not satisfied and that the conviction under section 69 is invalid."  Id.

9

However, courts have found, in other situations, that a conviction for resisting arrest does not bar a claim for excessive force. For example, in Sanford v. Motts, 258 F.3d 1117 (9th Cir. 2001), the Ninth Circuit held that Heck did not bar the plaintiff's excessive force claim in spite of her conviction for resisting arrest in violation of California Penal Code § 148(a)(1)[1]. Because Sanford alleged that the defendants punched her after she had already been handcuffed and arrested, the court found that the grant of summary judgment in favor of defendants was improper. The court reasoned, "Excessive force used after an arrest is made does not destroy the lawfulness of the arrest. Sanford's conviction requires that Motts be acting lawfully in the performance of his duties 'at the time the offense against him was committed.'" Id. at 1120.

Similarly, in Smith v. City of Hemet, 394 F.3d 689 (9th Cir. 2005) (en banc), the Ninth Circuit held that "a § 1983 action is not barred under Heck unless it is clear from the record that its successful prosecution would necessarily imply or demonstrate that the plaintiff's earlier conviction was invalid." Id. at 699 (emphasis in original). Therefore, the court found that a grant of

---

[1] Section 148(a)(1) is a misdemeanor offense which penalizes any person who "willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician . . . in the discharge or attempt to discharge any duty of his or her office or employment." Cal. Penal Code § 148(a)(1). Section 69, under which Heltsley was convicted, is a felony offense which penalizes any person who "who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law, or who knowingly resists, by the use of force or violence, such officer, in the performance of his duty." Cal. Penal Code § 69. This difference does not impact the Court's analysis.

10

summary judgment was improper where it could not "determine that the actions that underlay Smith's conviction upon his plea of guilty occurred at the time of or during the course of his unlawful arrest." Id.

Heltsley argues that there were two distinct altercations underlying his conviction and that the record does not demonstrate upon which altercation his conviction was based. According to Heltsley, the first altercation occurred while he was conscious and the second occurred between the time he blacked out and the time he was handcuffed in the ambulance. Heltsley argues that his excessive force claim is based upon the officers' conduct during the first altercation because he has no recollection of the second. Therefore, Heltsley argues that his claim is not barred under Heck because there is no evidence to refute the theory that his no contest plea was based on his conduct during the second altercation.

Heltsley's counsel stipulated that the factual basis for his no contest plea was based on the police reports and the preliminary hearing. Defendant Harris' police report and testimony at the preliminary hearing support Plaintiff's theory. Harris describes the first phase of the incident, including "a significant struggle, during which Earl sustained a compound fracture of his right arm." Heltsley Report at 1. According to Harris' report, "Earl was finally handcuffed, but that did not stop his efforts to escape. Earl's efforts to rise to his feet were only overcome by the application of bodily force by several additional responding officers, as well as Officer Dicious [sic], Officer Mandell,

11

1 Officer Lewis and I, which pinned Earl's legs to his buttocks and
2 his body to the ground." Id. According to Harris' testimony, once
3 Heltsley was restrained,

> Sergeant Dixon called for an ambulance with four-point
> restraints . . . so that Earl may be controlled and his
> injuries attended . . . By the time [the paramedics]
> arrived, we found that Earl had gone limp and stopped
> breathing; his skin had grown ashen.  The paramedic
> immediately asked that Earl be turned over and that his
> handcuffs be removed.  Earl was turned over, and Officer
> Lewis removed one of his handcuffs.  Earl took two deep
> breaths, then sat up an began to scream . . . While
> other officers grabbed other parts of his body, I
> reached out for Earl's right arm. <u>After a second
> struggle</u>, I was able to gain control of his right arm
> again.  The handcuffs were replaced and Earl was placed
> onto an ambulance gurney, in four-point restraints and
> handcuffs . . . Officers Mandell and Decious accompanied
> Earl to the hospital, where he again had to be
> physically restrained, twice!

13 Id. at 1-2 (emphasis added).

14 Similarly, at the preliminary hearing, Harris testified as
15 follows, "The first portion of the arrest, the first struggle,
16 lasted some where [sic] in the neighborhood of 30 seconds, maybe a
17 minute . . . The second one was a shorter period of time, probably
18 half as long." Preliminary Hearing Transcript at 92-93.  Harris
19 was the only officer who testified about the arrest at the
20 preliminary hearing.

21 As in Smith, there is no indication of whether Heltsley's plea
22 was based on his conduct during the first struggle or the second;
23 Heltsley plead no contest to one count of violating § 69, "but
24 there is no information as to which of his actions constituted the
25 basis for his plea." Smith, 394 F.3d at 698.  Further, the
26 charging document simply recites the statutory description of the
27 offense.  It is possible that the officers used excessive force to

12

subdue Heltsley during the first struggle and that they only acted lawfully during the second struggle. Because the factual basis for Heltsley's no contest plea is not clear, Heltsley's "lawsuit does not necessarily imply the invalidity of his conviction and is therefore not barred by Heck." Id. (citing Heck, 512 U.S. at 487).

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motion for summary judgment.[2]

IT IS SO ORDERED.

Dated: 6/4/07

CLAUDIA WILKEN
United States District Judge

---

[2] Defendants request that the Court take judicial notice of various court records related to Heltsley's conviction. Plaintiff does not oppose the request. The Court GRANTS Defendants' request for judicial notice (Docket No. 18). Defendants' objection to evidence submitted by Plaintiff (Docket No. 26)) is DENIED as moot. The Court did not consider any improper or inadmissible evidence in deciding these motions.

13